FILED
2005 Aug-29  AM 09:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JIMMY L. HOBBS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO. :** |
| | ) | **2:04-CV-0238-VEH** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNUM LIFE INSURANCE** | ) | |
| **COMPANY** | ) | |
| **OF AMERICA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF OPINION

This action is before the court on Plaintiff Jimmy L. Hobbs's ("Hobbs")

Motion to Remand (doc. 18).  For the reasons set forth hereinafter, the Motion is due

to be granted.

## Background

On December 3, 2003, Hobbs filed in the Circuit Court for Jefferson County,

Alabama, an action against Defendants for (1) breach of agreement to provide

disability coverage, (2) negligent/wanton failure to provide disability insurance

through a voluntary undertaking, (3) fraudulent misrepresentation for representing

that Defendants would enroll him with disability coverage (sic), (4) fraudulent

suppression for failing to tell Hobbs that the Unum policy had been changed so that

disability was no longer covered, (5) breach of insurance contract to pay disability benefits, and (6) breach of fiduciary duty voluntarily undertaken to provide Hobbs with disability insurance. On February 5, 2004, Defendants Walter Industries, Jim Walter, Best, Armbrester and Allen removed the action to this court on the basis of federal question jurisdiction, claiming that all of Hobbs' claims were super-preempted by ERISA. Defendant Unum joined in the removal. On March 3, 2004, Hobbs filed his Motion to Remand, which the Defendants oppose. The parties have submitted evidentiary material and briefs.

## Facts

Hobbs was severely injured on January 8, 2001. He filed with Defendant Unum a claim for long-term disability benefits pursuant to coverage he had elected under Walter Industries' Voluntary Group AD&D Plan ("the Disability Plan"), which is available to eligible[1] salaried employees of Walter Industries and its subsidiaries, including Jim Walter. Hobbs had voluntarily elected to be covered by the Disability Plan. The effective date of his coverage was December 27, 1995. The Disability Plan is insured by a Unum group policy of insurance issued to Walter Industries, Inc. Hobbs claims that it was only after he filed his claim that he learned that the long-

---

[1] Walter Industries establishes the eligibility requirements for participation in the Voluntary Group AD&D Plan.

2

term disability benefits under his policy had been deleted as of June 1, 1998. Defendants argue, but the evidence does not establish, that the decision to delete the Disability Plan was recommended by Unum and made by Walter Industries. At best, the evidence is ambiguous, Corbin Affidavit ¶ 20; Perrins Affidavit ¶ 10. Hobbs further claims that Unum had, up until Jim Walters terminated Hobbs's employment in July, 2001, charged Hobbs premiums for such coverage, and that Defendant Jim Walter Resources, Inc. ("Jim Walter") had continued to withhold such premiums from his paycheck, distributing them to Unum.[2].

Jim Walter provided eligible employees, including Hobbs, various insurance coverages which are described in the Jim Walter Benefit Handbook. The Unum Disability Plan coverage at issue was voluntarily elected by Hobbs, who paid for it through payroll deductions. The Disability Plan is not mentioned in the Handbook. All versions of the Handbook unambiguously tell employees that the insurance coverages described in the Handbook are subject to ERISA.

Jim Walter also provided its employees, including Hobbs, with its various "BENEFLEX" booklets. These booklets do reference the Unum coverage and have the name "Walter Industries, Inc." on them. These booklets do not refer to ERISA.

---

[2] Defendants contend that another subsidiary of Walter Industries, Best Insurers, remitted the premiums to Unum.

3

Additionally, Jim Walter gave its employees, including Hobbs, pamphlets prepared by Unum describing the coverages and explaining the benefits of the policy at issue. The Unum pamphlets, which also have "Walter Industries, Inc." displayed, were distributed to employees together with a cover letter from Walter Industries that stated, "We are pleased to present this employee benefit for your consideration." (PX5-B; PX1-A). The pamphlet states that the coverage is "[u]nderwritten by" [Unum] and that "[y]our employer is offering you the opportunity to purchase [Unum's] AD&D insurance."

Defendant Armbrester, a Jim Walter employee, spoke to Hobbs about the Unum Disability Plan at the time Hobbs was hired. Armbrester did not recommend or endorse the Disability Plan in any way. Hobbs's choice was to participate in the Voluntary Group AD&D Plan. Jim Walter collected the applicable monthly premiums by payroll deduction from Hobbs's salary. Hobbs continued to be a participant in the Disability Plan until his employment was terminated in July, 2001.

The Unum pamphlets also do not mention ERISA at all. Instead, they read:

### CERTIFICATE OF INSURANCE

Each employee enrolling in the Plan will receive a certificate of insurance from the [insurer], the underwriter of the plan.

(PX5-B; PX1-A).

4

Defendants contend that "[t]he UNUM Certificate of Coverage [was] provided to Disability Plan participants [and] contains the following language regarding ERISA:

> This certificate of coverage ... is governed ... to the extent applicable by the Employee Retirement Security act of 1974 (ERISA) and any amendments.

Defendants cite to Exhibit 3 to the Corbin Affidavit. Exhibit 3 is not a Certificate of Coverage nor does it contain the quoted language.

Unum sends Walter Industries copies of all correspondence regarding an employee's claims for benefits under the Plan. Each year, Walter Industries files a Form 5500 regarding the various employee benefit plans sponsored by Walter Industries. Beginning in 2001, Walter Industries included a Schedule "A" to the Form 5500 containing information regarding the Plan. That information was provided by Unum to Walter Industries. Walter Industries is ultimately responsible for selecting the various terms and conditions associated with the employee benefit plans it sponsors.

Jim Walter's role with respect to the Disability Plan is to distribute to its employees materials sent by Walter Industries, assist employees with filing claims for benefits, provide employer information when necessary in filing claims for benefits, and, when necessary, answer employee questions regarding the different employee

benefits available.

Coverage under the Unum policy was completely voluntary. If eligible employees chose to be covered, the employees themselves determined the benefit amounts and whether to elect employee-only coverage or family coverage. Employees who chose coverage under the Unum policy paid, through payroll deduction, 100% of the premiums. Neither Walter Industries nor Jim Walter received any fees or commissions resulting from employees electing coverage under the Unum policy.

After Hobbs' January 8, 2001, injury, Hobbs applied for and received long-term disability benefits under the company-provided policy (which was not the Unum policy at issue) and was deemed disabled pursuant to the Alabama Workers Compensation Act and the U.S. Social Security Act. Hobbs also sought benefits under the Unum policy. Jim Walters would not take Hobbs' claim, telling him there was no coverage. Ultimately, Hobbs obtained a claim form from Unum, which he completed and submitted on March 14, 2002. Unum denied the claim on May 2, 2002, on the ground that the permanent total disability benefit had been removed from the Unum policy effective June 1, 1998. The evidence is in dispute (but ultimately irrelevant to this court's analysis of the Motion) whether Hobbs was told, prior to his injury, that the Disability Plan benefit had been removed from the Unum

6

policy.

## Issues

The parties agree that the issue before the court on this Motion is whether or

not the policy at issue is exempted from ERISA pursuant to the "safe harbor"

regulations established at 29 CFR § 2510.3-1(j)[3,4]. If the policy falls within the "safe

---

[3] The Plaintiff claims that the Defendants, as the removing parties, have the burden of proving that the safe harbor provisions do not apply. The Court notes that this assertion "raises an interesting tension in the law: On the one hand, it is quite clear that the burden of establishing removal jurisdiction rests squarely on the shoulders of the removing party, and any doubts should be resolved in favor of remand. *See, e.g., Leonard v. Enterprise Rent A Car,* 279 F.3d 967, 972 (11th Cir.2002) ("A removing defendant bears the burden of proving proper federal jurisdiction."); *University of So. Ala. v. American Tobacco Co.,* 168 F.3d 405, 411 (11th Cir.1999) ("Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); *Fowler v. Safeco Ins. Co. of Am.,* 915 F.2d 616, 617 (11th Cir.1990) ("In a removal action, the burden is on the defendant, not the plaintiff, to plead the basis for jurisdiction."). On the other hand, courts must also be cognizant of and abide by Congress's ability to preempt completely certain fields, such as ERISA. *See, e.g., Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) ("In sum, the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing [of the parties' respective needs].... The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."). Construing too heavily the burden placed on the removing defendant could mean that an action that Congress intended to be brought exclusively in a federal forum would be remanded to state court. However, allowing a defendant in any insurance action involving an employee and his or her policy to remove the case by chanting an "ERISA" mantra raises significant federalism concerns." *Edwards v. Prudential Ins. Co. of America,* 213 F.Supp.2d 1376, *1381 (S.D.Fla.,2002). The court is not stating that this characterizes the Defendants' actions here, it simply notes the occasionally apparently conflicting policies at play here.

[4] To qualify for the "safe harbor" exception, a plan must satisfy the following requirements:
(1) No contributions are made by an employer or employee organization;
(2) Participation in the program is completely voluntary for employees or members;
(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or

7

harbor," ERISA does not apply and the case is due to be remanded. If the policy does

not fall within the safe harbor, the parties agree that the policy is an employee benefit

plan within the scope of ERISA's super-preemption,[5] and therefore remand would be

improper. As described in more detail below, the issue as framed by these parties, is,

was the "Disability Plan" of optional additional personal accident insurance issued

by Unum "endorsed" by Walter Industries and/or Jim Walter?

Hobbs also argues that the Defendants' failure to attach evidentiary material

showing that Jim Walter endorsed the Unum policy is a defect that, by itself, requires

remand (Pl. Brief, doc. 21, at 18). The court will deal with these issues in reverse

order.

_____

members, to collect premiums through payroll deductions or dues check-offs and to remit them
to the insurer, and

(4) The employer or employee organization receives no consideration in the form of cash or
otherwise in connection with the program, other than reasonable compensation, excluding any
profit, for administrative services actually rendered in connection with payroll deductions or dues
check-offs. 29 C.F.R. § 2510.3-1(j)

   [5] The statutory definition of an employee benefit plan includes employee welfare benefit
plans. *See* 29 U.S.C. § 1002(3). This section defines an employee welfare benefit plan as:
... any plan, fund, or program which is heretofore or is hereafter established or maintained by an
employer or by an employee organization, or both, to the extent that such plan, fund or program
was established or is maintained for the purpose of providing for its participants or their
beneficiaries, through insurance or otherwise, (A) medical, surgical or hospital care or benefits in
the event of sickness, accident, disability, death or unemployment.... 29 U.S.C. § 1002.

## Analysis

I.    Removal and Remand – the Standard.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994). For removal to be proper, the court must have subject-matter jurisdiction in the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the Defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In addition, the removal statute must be strictly construed against removal, and any doubts should be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

In reviewing a Motion to Remand, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists. *Friedman v. New York Life Ins. Co.,* --- F.3d ----, 2005 WL 1324593 (11th Cir. 2005); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir.2001).

> That burden goes not only to the issue of federal jurisdiction, but also to questions of compliance with statutes governing the exercise of the right of removal. *Albonetti v. GAF Corporation-Chemical Group,* 520 F.Supp. 825, 827 (S.D. Texas 1981); *Jennings Clothiers of Ft. Dodge, Inc. v. U.S. Fidelity & Guaranty Co.,* 496 F.Supp. 1254, 1255 (D.Iowa 1980); *Fort v. Ralston Purina Company,* 452 F.Supp. 241, 242 (E.D.Tenn.1978).

9

*Parker v. Brown,* 570 F.Supp. 640, 642 (D.C.Ohio, 1983)

> While it is undoubtedly best to include all relevant evidence in the petition for removal and motion to remand, there is no good reason to keep a district court from eliciting or reviewing evidence outside the removal petition. We align ourselves with our sister circuits in adopting a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction. We emphasize, as did the court in *Allen,* that "under any manner of proof, the jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time." *Allen,* 63 F.3d at 1335.

*Sierminski v. Transouth Financial Corp.,* 216 F.3d 945, 949 (11th Cir. 2000).

Hobbs's argument that Defendants' failure to attach evidentiary material showing that Jim Walter endorsed the Disability Plan is a defect that, by itself, requires remand (Pl. Brief, doc. 21, at 18) is not supported by the case law. Accordingly, to the extent that Hobbs seeks remand on this basis, the Motion is **DENIED**.

II.     "Endorsement" Provisions.

As previously stated, the parties agree that the issue for this court to decide is whether the (Unum) Disability Plan coverage was "endorsed" by Hobbs' employer.[6]

Merriam-Webster first defines "endorse" as it relates to negotiable instruments

_____

[6] The court recognizes that the 11th Circuit has stated that a plan that falls outside of the regulatory "safe harbor" exception does not necessarily fall within the jurisdiction of ERISA. *See*, *Anderson v. Unum Provident Corporation*, 369 F.3d 1257 (11th Cir. 2004). Because this court finds that the plan falls within such exception, it does not reach that issue.

and then as follows:

**2 :** to approve openly *<endorse* an idea>; *especially* **:** to express support or approval of publicly and definitely *<endorse* a mayoral candidate>
**synonym** see APPROVE

As noted, the parties agree that the issue is whether the safe harbor provisions of 29 CFR § 2510.3-1(j) excludes the Disability Plan at issue from ERISA. There are four requirements under 29 CFR § 2510.3-1(j), all of which must be met for the safe harbor to apply. The parties properly concede that all but the third requirement have been met. Hobbs paid the entirety of the premiums under the policy, and his purchase thereof was strictly voluntary. Moreover, neither Walter Industries nor Jim Walter received any consideration or benefits in connection with making the policy available to Hobbs or other employees. Thus, the issue is whether Walter Industries or Jim Walter endorsed the Unum policy.

This factor, endorsement,

closely parallels the underlying policy of the safe harbor regulation which operates "on the premise that the absence of employer involvement vitiates the necessity for ERISA safeguards." *Johnson,* 63 F.3d at 1133. E mployer neutrality is the key, and the employer's involvement must be viewed from the perspective of an objectively reasonable employee. As explained in *Johnson:*

[A]n employer will be said to have endorsed a program within the purview of the ⋯ safe harbor regulation if, in light of all the surrounding facts and circumstances, an objectively reasonable employee would conclude on the basis of the employer's actions that the employer had not merely facilitated the program's availability but had exercised

11

control over it or made it appear to be part and parcel of the company's own benefit package. *Id.* at 1135; *see also Stoudemire v. Provident Life & Accident Ins. Co.,* 24 F.Supp.2d 1252, 1256-57 (M.D.Ala.1998) ("The employer's involvement will be evaluated from the point of view of a reasonable employee."). It is, thus, from this reasonable-employee viewpoint that the court must analyze the evidence.

*Anderson v. UnumProvident Corp.* 322 F.Supp.2d 1272, *1276 (M.D.Ala., 2002) (aff'd, 369 F.3d 1257 (11th Cir. 2004)). Thus, in analyzing the issue of endorsement, this court looks only at such evidence of involvement of Walter Industries or Jim Walter that a "reasonable employee" would know about.

"The question of endorsement *vel non* is a mixed question of fact and law. In some cases the evidence will point unerringly in one direction so that a rational fact finder can reach but one conclusion. In those cases, endorsement is a question of law." *Id.*, at 1277, quoting *Johnson v. Watts Regulator Co.*, 63 F.3d 1129 at 1135 n.3 (1st Cir. 1995). The court finds that Hobbs' and Defendants' accounts of the material facts are not inconsistent with one another. For the reasons that follow, the court finds that the Defendants have not established that, from the reasonable employee's viewpoint, that is, from evidence of activities that a Jim Walter employee would know about, Walter Industries or Jim Walter "endorsed" the Disability Plan. Thus, Hobbs is entitled to have this case remanded to the Circuit Court for Jefferson County, Alabama.

12

Facts that argue in favor of finding endorsement are as follows. First, Walter Industries selected Unum for the policy it offers to its employees. The employer's selection of the insurer is not alone enough to 'move an employer out of the safe harbor;" however, it is one fac tor which can weigh in favor of a finding of endorsement. *See*, *Butero v.Royal Maccabees Life Ins. Co.*, 174 F.3d 1207 at 1213 n. 4. Additionally, there is evidence, albeit ambiguous, that Walter Industries played a role in deciding to delete long-term disability coverage from the Unum policy. Again, under *Butero*, assuming clear evidence, this is a factor that militates against finding an employer is within the safe harbor. Third, the BENEFLEX booklet and the Unum pamphlets display the name "Walter Industries, Inc." These factors are not sufficient to remove the Defendants from the safe harbor.

The court agrees with Hobbs that ma ny of the functions performed by Defendants indicate their neutrality vis-a-vis the long-term disability policy. Jim Walter's tasks such as collecting premiums, maintaining a supply of the insurer's claim forms, completing the employer portion of claim forms, submitting claim forms to Unum and keeping a roll of eligible employees have all been deemed merely "administrative" and not violative of the endorsement inquiry of the safe harbor regulation. *Anderson,* 322 F.Supp.3d at 1277*, see also Johnson,* 63 F.3d at 1136; *see also Mortier v. Massachusetts Gen. Life Ins. Co.,* 805 F.Supp. 816, 820

13

(C.D.Cal.1992) (finding that employer who kept file of forms on hand for employees had not established or maintained an ERISA plan). Hobbs' enrollment form for the Disability Plan doesn't say "Walter Industries" or "Jim Walter", it only has the name of Unum's predecessor Disability Plan provider, Commercial Insurance. ( Plaintiff's Exhibit 1-B to Hobbs Affidavit.) Finally, neither Walter Industries nor Jim Walter involves itself in substantive aspects of policy administration. It is Unum alone who decides claims eligibility.

The Plaintiff's Motion to Remand is due to be granted.

A separate Order will be entered.

**DONE** this the 29th day of August, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JEANNETTE ROGERS DULAN | : |
| | : |
| Plaintiff | : |
| | : |
| v. | : |
| | : |
| HUNTSVILLE HOSPITAL | : Civil Action File No. CV 02-J-2445-NE         : |
| ASSOCIATION, INC. | : |
| | : |
| DR. ANDERSHOCK, M.D. | : |
| | : |
| CURRENTLY UNKNOWN PHYSICIAN/ | : |
| EMPLOYEES OF HUNTSVILLE | : |
| HOSPITAL'S EMERGENCY ROOM | : |
| ASSIGNED TO PLAINTIFF'S CASE | : |
| | : |
| Defendants | : |

## NOTICE OF APPEAL

Notice is hereby given that Jeannette Rogers Dulan, Plaintiff in the above named case, hereby

appeals to the United States Court of Appeals for the Eleventh Circuit from the ORDER entered in

this action on the 5th day of August, 2005.

Dated August 29, 2005

/s/_____
W. SHERMAN ROGERS, ESQ.
2900 Van Ness Street, N.W.
Ste. 405
Washington, D.C. 20008
202)806-8035
Alabama U.S. District
Court Bar Number: ASB-0385-G67W